**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**CARMEN TAFOYA,**

      **Plaintiff,**

v.                                                                                          CIV No. 97-1447 JP/DJS

**TONY MARTINEZ, in His Official Capacity;
LES MONTOYA, in His Official Capacity; and
THE CITY OF LAS VEGAS,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On August 13, 1998, at a pretrial conference, plaintiff was present and represented by Michael Armstrong, Esq., and defendants were represented by James Sullivan, Esq. I discussed with counsel the pending motions in this case: (1) Defendants' Motion for Summary Judgment (Doc. No. 25), filed July 21, 1998; and (2) Plaintiff's "Motion for Leave to File Surreply" (Doc. No. 32), filed August 11, 1998. After a thorough consideration of the facts, the law, and the arguments of counsel, I conclude that defendants' motion should be granted and plaintiff's motion should be denied.

**I. BACKGROUND**

On May 14, 1991, Carmen Tafoya was appointed to the position of Finance Director for the City of Las Vegas' Department of Finance and Administration. The duties for the position of Finance Director include: (a) receiving all monies belonging to the municipality; (b) "keep[ing] the

accounts and records in the manner prescribed by law and accepted accounting principals [sic]" (*see Exhibit 6 to Plaintiff's Response* (Ordinance 81-18, Article VI)); (c) preparing and modifying the annual budget; (d) submitting monthly (or more often if required by the governing body) reports of the receipts and expenditures of the municipality; (e) performing all other financial and supervisory duties and making all reports required by the State of New Mexico; and (f) expending money only as directed by the Governing Body as required by state law and the Department of Finance and Administration rules and regulations.

On January 30, 1997, the City Council had a special meeting. "Agenda Item No. 2" was the "[p]ersonnel decision regarding Finance Director Carmen Tafoya." *See Exhibit I to Defendants' Motion for Summary Judgment.* The City Manager, Les Montoya, recommended that plaintiff be removed from her position as Finance Director. The City Council voted 5-3 in favor of the City Manager's recommendation. According to Article II, § 11 of the City Charter, the Mayor only votes in the event of a tie on matters before the City Council.

On January 30, 1997, plaintiff was removed from the position of Finance Director, but was not dismissed from employment with the City. She remained on the payroll until February 7, 1997. Subsequent to her removal as Finance Director, she was offered a position in finance at the Housing Authority. On February 10, 1997, plaintiff informed the City Manager that she would not accept the Housing Authority position.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's Complaint contains three "causes of action": (I) "Title 42 U.S.C. Section 1983"; (II) "Breach of Implied Contract"; and (III) "Intentional or Negligent Infliction of Emotional Distress." Defendants have moved for summary judgment on all of plaintiff's claims.

### A. *Summary Judgment Standard*

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED.R.CIV.P. 1). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact...." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 8887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, *supra* at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322. The non-moving party must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511 (1986) ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge...whether there is any upon which a jury could properly proceed to find a verdict for the party producing it"). *See also Hom v.*

*Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (citing *Anderson*, *supra* for the proposition, "the non-moving party must present more than a mere scintilla of evidence").

### B.     *Analysis*

– "Title 42 U.S.C. Section 1983" Claim

Plaintiff alleges in her first cause of action that the "Defendants' termination of Plaintiff's employment, without compliance with the statutory provisions of Article III, Section 8 of the Las Vegas City Charter, constituted a violation and deprivation of her rights to due process of law under the Fourteenth Amendment to the United States Constitution and is actionable pursuant to 42 U.S.C. Section 1983." *Complaint* at ¶ 27.

To determine whether an individual was denied procedural due process, "'courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that due process protections were applicable, and, if so, then (2) was the individual afforded an appropriate level of process.'" *Hatfield v. Bd. of Cy. Com'rs for Converse City*, 52 F. 3d 858, 862 (10th Cir. 1995) (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994)). "To prevail on a due process claim against state officials, a plaintiff must first demonstrate that the Due Process Clause of the Fourteenth Amendment protects the liberty or property interest of which she was allegedly deprived." *Id.* at 863 (citation omitted). "Whether state officials have violated the Fourteenth Amendment is a question of federal constitutional law, but the preliminary question of whether a plaintiff possessed a protected property interest must be determined by reference to state law." *Id.* at 863 (citation omitted). "In the context of a public employee . . . , the touchstone is whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation', or 'an abstract need or desire' for

it." *Farthing*, 39 F.3d at 1135 (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. at 564, 577 (1972)).

The New Mexico Supreme Court recognizes a constitutionally protected property interest when an employee has an express or implied right to continued employment. *See, e.g., Lovato v. City of Albuquerque,* 106 N.M. 287 (1987).

Plaintiff's claim hinges on the issue of whether she had a property interest in her job. Defendants argue that she did not because she was an appointed, exempt, and at-will employee.

Plaintiff contends that the City's Merit System set forth in City Ordinance 73-21 demonstrates that plaintiff had an implied right to continued employment and applied to the position of Finance Director. Section 2-6-1 of the City Ordinance, which created the City's Merit System states:

> The provisions . . . [of the Personnel Rules] shall apply to all employees of the City, except as to any provisions, which may be inconsistent with personnel rules promulgated by the Police Department specifically for certified law enforcement officers . . . .  These rules and any pertinent administrative regulations constitute the Merit System for the City of Las Vegas.

*See Exhibit H to Defendants' Motion.*

In *Webb v. Village of Ruidoso,* 117 N.M. 253 (Ct. App. 1994), *cert. denied,* 117 N.M. 524 (1994), a case factually similar to plaintiff's, the New Mexico Court of Appeals held that according to New Mexico Statute § 3-12-4, plaintiff, who was a clerk-treasurer, was an appointed official, and could not rely on a personnel merit system to create an implied contract of employment.

>   Section 3-12-4 states:
>
>   3-12-4.  Governing body to provide for creation of certain appointive
>            offices.
>   A.      The governing body of each municipality shall[1] provide for the office
>           of clerk, treasurer and police officer.  The office of clerk and
>           treasurer may be combined and one person appointed to perform
>           both functions....
>   C.      The governing body may provide for deputy appointed officials who
>           may exercise the powers granted the appointed officials.

N.M. STAT. ANN. § 3-12-4 (1978).  In *Webb* the court dismissed a breach of contract claim asserted by the village clerk-treasurer based on the village's personnel merit system.  The court held that the clerk-treasurer for the Village of Ruidoso Downs was an appointed official described in § 3-12-4 and thus could <u>not</u> be included by a municipality within the protections accorded village employees under a personnel merit system.  In *Silva v. Town of Springer*, 121 N.M. 428 (Ct. App. 1996), *cert. denied,* 121 N.M. 375 & 444 (1996)*,* the court held that a personnel ordinance does not apply to employees whose "positions...were specifically exempted from the provisions of the ordinance or [where] the ordinance is determined as a matter of law not to apply to the positions held by appellants."  Because one of the plaintiffs in *Silva*, Linda Baca, was the clerk-treasurer of the Town of Springer, an appointed official under § 3-12-4, the court, relying

---

[1]Section 12-2-2 of the New Mexico Statutes Annotated, entitled "Rules of Construction," provides guidance on the meaning of "shall":

>   In the construction of constitutional and statutory provisions, the following rules shall be
>   observed unless such construction would be inconsistent with the manifest intent of the
>   legislature or repugnant to the context of the constitutional provision or statute....(I): the
>   words "shall" and "will" are mandatory and "may" is permissive or directory.

N.M. STAT. ANN. § 12-2-2 (1978).

on *Webb*, held that as a matter of law the ordinance could not create a contract of employment.[2]

Here, plaintiff admits that she "operated under the job description as found in Ordinance 81-18." *See Plaintiff's Response* at p. 3. That job description makes it clear that as Finance Director, plaintiff was the treasurer for the City. *See Exhibit 6 to Plaintiff's Response.* Since plaintiff does not dispute that she was the treasurer for the City of Las Vegas, under *Webb*, she was a public officer and could not be covered by a merit system ordinance.

"'Ordinarily an employee's at-will status forecloses a property interest claim because the employee has no legitimate expectation of future employment.'" *Lenz v. Dewey*, 64 547, 551 (10th Cir. 1995) (quoting *Russillo*, 935 F.2d at 1170).

Here, the plaintiff was an at-will employee. In the Initial Pretrial Order entered on March 19, 1998 (Doc. No. 12), under the heading "Stipulations," the parties stipulated to the following:

> 5. Carmen Tafoya was appointed to the position of Finance Director for the City of Las Vegas on May 14, 1991.
> 6. The position of Finance Director is a "department director" position.
> 7. The position of Finance Director is an exempt position serving at the pleasure of the City Council.

*See Initial Pretrial Report* (Doc. No. 12) at p. 3.

In addition, the job description for the position of "Finance Director" created on December 11, 1986, states that the position of Finance Director "is exempted from the Personnel Rules for the City of Las Vegas and serves at the pleasure of the City Council." *See Exhibit A to Defendants' Motion.* The job description for Finance Director, which was approved by the City

---

[2] In *Silva* the court declined to grant summary judgment as to the other plaintiff, Felipe Silva, because there were "material disputed issues" surrounding "the question of whether . . . [Silva's] position was that of a field supervisor or department head so as to be exempted from the protections afforded by the personnel merit ordinance. . . ." *Id.* at 433. In this case, however, plaintiff does not dispute that she was appointed to the City's treasurer position.

Council on January 12, 1996, states that the position "does not fall with [sic] the City's Merit System Plan for purposes of dismissal." *See Exhibit B to Defendants' Motion*.[3]

Furthermore, Section 8 of the "City Charter of Las Vegas, New Mexico" states:

> [A]ll Department Directors shall be appointed or dismissed by the Mayor and confirmed by the Council upon recommendation by the City Manager. All other employees shall be appointed by the Manager upon recommendation by the Department Directors, confirmed by the Mayor and the Council and dismissed under procedures as provided by the Merit System Plan.

*See Exhibit F to Memorandum in Support of Defendants' Motion for Summary Judgment* at p. 10 (emphasis added). This language implies that the rules and procedures applicable to department directors are different from the rules and procedures – set forth in the Merit System Plan – which apply to "all other employees."

Plaintiff submitted affidavits and deposition testimony of many individuals in an attempt to establish that she had a reasonable expectation of continued employment. Carmen Gonzales, the City Clerk, Tony Martinez, the City's Mayor, Virginia Dominguez, the City's Personnel Director, and Les Montoya, the former City Manager, testified that they believed, among other things, that: (1) the position of Finance Director was a permanent position, and (2) the Personnel Rules applied to all employees. The plaintiff's co-worker's perceptions regarding the permanency of her

---

[3] Plaintiff did not sign either of these documents, and plaintiff contends that she was aware only of the job description set forth in Ordinance 81-18 which does not include the language found in the December 11, 1986, or January 12, 1996 job descriptions. *See Exhibit 6 to Plaintiff's Response*. My conclusion that plaintiff had no property interest in her position as Financial Director would not change even assuming plaintiff was unaware of both job descriptions. Plaintiff does not allege that the job descriptions were intentionally concealed from her or fraudulently created after her termination. In addition, there are independent grounds, set forth above, supporting the conclusion that plaintiff had no property interest in her position.

position are irrelevant absent an ambiguity or omission in the rules governing the City's officers.[4] In addition, plaintiff has not presented any evidence that someone with authority made representations upon which she reasonably and detrimentally relied regarding the permanency of her position. None of these witnesses testified that false representations were made to plaintiff or that City personnel led her to believe that she could only be dismissed for cause and that she relied to her detriment upon these representations.[5]

Plaintiff also argues that her Fourteenth Amendment rights were violated because: (1) the Mayor never dismissed her, as required by the Personnel Rules; and (2) she was not provided a pre-termination hearing as required by *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487 (1985), and the Personnel Rules.

Plaintiff appears to be arguing that she had a property interest in the City's procedures for termination of permanent employees. If plaintiff was not a permanent employee, did not have a contract of employment or any other property interest in her job, and could be dismissed "at-will," then the procedures regarding dismissal could not create a property interest. "Any suggestion in

---

[4] Under *Webb* and *Silva*, however, it is dubious that an interpretation of an ambiguity or an omission could create a property right since not even an explicit statement in a merit system can override the statute N.M. STAT. ANN. § 3-12-4 and create a property right for city officers.

[5] Plaintiff's only evidence of any statement made to her regarding the length of her employment is her own testimony that the former City Manager, Les Montoya, told her that "while [she] was doing a good job, [she] would have employment with the city." *See Exhibit 8 to Plaintiff's Response (Deposition of Carmen Tafoya),* p. 204. This allegation is insufficient to create a genuine issue of material fact. Plaintiff does not contend that Mr. Montoya told her that she would indefinitely have employment with the City, nor does she aver that he made such a guarantee. Plaintiff does not indicate when this statement was made to her, nor does she allege that she relied upon this statement to her detriment. Even if Mr. Montoya had made such a statement upon which plaintiff detrimentally relied, this statement would be deemed invalid because it would have been made without statutory authority. *See Trujillo v. Gonzales*, 106 N.M. 620, 621-622 (1987); *Silva*, 121 N.M. at 432.

New Mexico case law that procedures create a property interest is erroneous." *Russillo v. Scarborough*, 935 F.2d 1167, 1171 (10th Cir. 1991).

In addition, Section 8 of the City Charter, which is the governing document for the City of Las Vegas, states that the dismissal procedures set forth in the Merit System apply to all employees except Department Directors. Under *Webb* and *Silva*, even if the City desired to do so, it could not have applied the procedures set forth in its Merit System to plaintiff.

Section 8 also states that the City Manager makes the recommendation of dismissal of department directors, and that the Council confirms that decision. Section 11 of the City Charter states that the "Mayor shall be the presiding officer of the Council and he shall vote only in the event of a tie on matters coming before the Council." Because there was no tie, there was no need or right for the Mayor to vote to dismiss plaintiff. Although plaintiff contends that New Mexico state law, specifically N.M. STAT. ANN. § 3-15-7 (1997 Cum. Supp.), requires the Mayor to act independently to discharge an appointed official, the language of that provision does not impose such a requirement.

– "Breach of Implied Contract" Claim

Plaintiff states in her second cause of action that "Plaintiff had an implied contract of employment with the City which provided that she could not be terminated from her employment without compliance with the procedures set forth in Article III, § 8 of the Las Vegas City Charter. *Complaint* at ¶ 33. The City complied with the procedures set forth in § 8 of the City Charter. Plaintiff neither had a property interest in her position, nor an implied contract of employment. Therefore, her first and second claims will be dismissed with prejudice.

– <u>Plaintiff's "Intentional or Negligent Infliction of Emotional Distress" Claim</u>

The New Mexico Tort Claims Act states that it is "the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act . . . ."  N.M. STAT. ANN. § 41-4-2.  Section 41-4-4 makes it clear that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12 NMSA 1978.  Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978."  N.M. STAT. ANN. § 41-4-4(A).

Defendants argue that the New Mexico Tort Claims Act does not waive governmental immunity for the tort of intentional or negligent infliction of emotional distress.

Plaintiff concedes that "none of the [eight exceptions to immunity granted in the New Mexico Tort Claims Act is] applicable to the facts at hand." *See Plaintiff's Response*, p. 23.  Plaintiff's only argument is that § 41-4-21 precludes the application of the NMTCA to this case because the subject matter of this case is an employer-employee relationship.  Section 41-4-21 states, "The provisions of the Tort Claims Act ... shall not affect the provisions of any personnel act, any rules or regulations issued thereunder or any other provision of law governing the employer-employee relationship."  Plaintiff's interpretation of § 41-4-21 would effectively create an additional, broad  waiver of immunity category which would cover employment cases.  The Court of Appeals rejected this interpretation of §  41-4-21 in *Rubio v. Carlsbad Municipal School District*, 106 N.M. 446 (Ct. App. 1987).  The court reasoned:

> Plaintiffs' argument [that § 41-4-21 precludes liability] fails for two reasons.  First, Section 41-4-4(A) clearly states immunity from liability exists except as waived under Sections 41-4-5 to -12.  Since plaintiffs do not claim a waiver under any of

> those sections, immunity from liability is preserved. . . . Second, it is likewise clear under Section 41-4-4(A) that if a waiver of immunity does exist, that waiver is subject to certain limitations. . . . Section 41-4-21, upon which plaintiffs rely, is found among those limitations. Read in context, it simply means that if a waiver of immunity exists that would entitle an injured party to bring a claim, the Tort Claims Act shall not affect personnel acts, rules or regulations, or other provisions of law governing the employer-employee relationship. That section was designed to preserve employment relations, not to provide a waiver of immunity. Where the language of a statute is plain, it must be given effect.

*Id.* at 448-49. Because plaintiff admits that none of the NMTCA's stated exceptions to immunity apply to her claim of intentional or negligent infliction of emotional distress, immunity has not been waived, and her third claim will be dismissed with prejudice.

### III.  PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

Plaintiff seeks permission to file a sixteen page surreply to defendants' motion. Plaintiff contends that she wants to respond to defendants' motion with more recent case law, and that she needs to have another opportunity to explain her arguments. All of the cases cited in plaintiff's proposed surreply were decided well in advance of the date of the filing of defendants' motion to dismiss and plaintiff's response. In addition, each and every argument plaintiff makes in her proposed surreply could have and should have been included in her original response. Plaintiff's failure to raise those arguments when she had the opportunity to do so does not justify permitting her to file a surreply. Under plaintiff's reasoning, all responding parties would be entitled to file surreplies because all responding parties would want the last word, and would want to raise additional points. Plaintiff's request will be denied.

        IT IS THEREFORE ORDERED that:

(1)    Defendants' Motion for Summary Judgment (Doc. No. 25) is GRANTED, and all of plaintiff's claims will be dismissed with prejudice; and

(2)     Plaintiff's "Motion for Leave to File Surreply" (Doc. No. 32) is DENIED.

_____
UNITED STATES DISTRICT JUDGE